**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| PREFERRED CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>PREMIUM SIDING CORP., an Illinois Corporation, KENNETH POPEJOY, CHRISTINE POPEJOY, JESSICA LITAVSKY, BRIAN PANEK, Individually, and as Next Friend and Guardian of OLIVIA PANEK and JACKSON PANEK, and DIANA PANEK, STATE FARM FIRE AND CASUALTY COMPANY, as subrogee of Kenneth Popejoy, and PRO HOME 1, INC., an Illinois Corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. 1:25-cv-15254<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, PREFERRED CONTRACTORS INSURANCE COMPANY RISK RETENTION GROUP, LLC ("PCIC"), by its undersigned attorneys and pursuant to 28 U.S.C. § 2201, seeks a declaratory judgment and other relief against Defendants, PREMIUM SIDING CORP. ("Premium"), KENNETH POPEJOY, CHRISTINE POPEJOY, JESSICA LITAVSKY, BRIAN PANEK, Individually, and as Next Friend and Guardian of OLIVIA PANEK and JACKSON PANEK, and DIANA PANEK (collectively, the "Popejoy Parties"), STATE FARM FIRE AND CASUALTY COMPANY ("State Farm"), and PRO HOME 1, INC. ("Pro Home") (all collectively, "DJ Defendants"). In support of its complaint, PCIC states as follows:

## NATURE OF THE ACTION

1

1.     This action seeks a declaration that PCIC owes no insurance coverage obligations to Premium and Pro Home, in connection with the claims against them in:

   a.   The lawsuit entitled *Kenneth Popejoy, Christine Popejoy, Jessica Litavsky, Brian Panek, Individually, and as Next Friend and Guardian of Olivia Panek and Jackson Panek, and Diana Panek v. Pro Home 1, Inc., and Premium Siding Corp.*, Case No. 2025 L 005417, in the Circuit Court of Cook County, Illinois (the "*Popejoy* suit"). A copy of Plaintiff's Complaint at Law ("Popejoy Complaint") is attached hereto as **Exhibit A**; and,

   b.   The lawsuit entitled *State Farm Fire and Casualty Company, as subrogee of Kenneth Popejoy v. Pro Home 1, Inc., and Premium Siding Corp.*, Case No. 2025 L 005417, in the Circuit Court of Cook County, Illinois (the "*State Farm* suit"). A copy of Plaintiff's Complaint at Law ("State Farm Complaint") is attached hereto as **Exhibit B**.

(Collectively, the "Underlying Lawsuits").

## THE PARTIES

2.     PCIC is a limited liability company organized under Montana law. PCIC's members are John C. Huth, a resident of Helena, Montana; Michael I. Manson, a resident of Irvine California; David E. Pike a resident of Whitefish, Montana; and Philip Salvagio, a resident of La Jolla, California.

3.     Premium is a corporation formed under the laws of the State of Illinois with its principal place of business in Palatine, Cook County, Illinois.

4.     In 2022, and on and before December 10, 2023, Kenneth Popejoy and Christine Popejoy, resided at 1339 Shagbark Lane, Wheaton, DuPage County, Illinois ("Popejoy Unit"), which was a townhome within the Wheaton Oaks Townhome Association (the "Association").

5.     On information and belief, Jessica Litavsky, Brian Panek, Diana Panek, Olivia Panek, and Jackson Panek reside in Cook County, Illinois.

6.     State Farm is an insurance company duly licensed to do business in the State of Illinois and has maintained claims offices throughout the State of Illinois.

7.      Pro Home is a corporation formed under the laws of the State of Illinois with its principal place of business in Mt. Prospect, Cook County, Illinois.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because this dispute arises between citizens of different states and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

9.      This Court has authority to grant PCIC declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

10.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because this is a civil action founded on diversity of citizenship including Defendants, who do business or reside within this District, and because this case involves coverage under certain insurance policies issued in this District concerning lawsuits arising from events that allegedly occurred in this District.

## FACTS

**The *Popejoy* Suit**

11.      The *Popejoy* suit was filed on April 23, 2025. (Ex. A).

12.      The Popejoy Complaint alleges that sometime in 2022, the Association retained Pro Home to perform certain remodeling work to the Association property. (Ex. A, ¶ 12).

13.      Pro Home, in turn, utilized subcontractors for the work, including Premium for siding removal and replacement on the townhomes. (Ex. A, ¶ 13).

14.      On April 27, 2022, Premium entered into an Independent Subcontractor Agreement ("Subcontractor Agreement") with Pro Home wherein Premium Siding agreed to perform certain siding work as requested by Pro Home. (Ex. A, ¶ 13). A copy of the Subcontractor Agreement is attached hereto as **Exhibit C**.

15.     Included in the remodeling work to the Association property was siding removal and replacement at the Popejoy Unit. (Ex. A, ¶ 12).

16.     Premium completed its work on the Popejoy Unit sometime in late 2022.

17.     The Popejoy Complaint alleges Pro Home and/or Premium cut the natural gas line segment connected to the gas-powered fireplace in the Popejoy Unit when performing siding removal and replacement work on the Popejoy Unit. (Ex. A, ¶ 19).

18.     The Popejoy Complaint alleges that on December 10, 2023, Kenneth Popejoy was utilizing a natural gas-powered fireplace in the Popejoy Unit, opened the natural gas line valve located next to the fireplace, and while Kennth Popejoy was adding tinder to the fireplace an explosion occurred when the fire began burning. (Ex. A, ¶¶ 20-21).

19.     The Popejoy Complaint alleges that Pro Home and/or Premium breach their duty of care to the Plaintiffs in the *Popejoy* suit, caused the explosion in the Popejoy Unit, which in turn caused the Plaintiffs in the *Popejoy* suit to be injured. (Ex. A, ¶¶ 23-25).

20.     The Plaintiffs in the *Popejoy* suit ask for a judgment against Pro Home and/or Premium in excess of $50,000, plus prejudgment interest. (Ex. A).

**The *State Farm* Suit**

21.     The *State Farm* suit was filed on January 21, 2025. (Ex. B).

22.     The State Farm Complaint realleges the facts that led to the explosion as alleged in the Popejoy Complaint, (Ex. B, generally).

23.     The State Farm Complaint alleges, "[a]t all material times, Popejoy held a homeowner's policy of insurance written by State Farm under Policy No. 73-KM-A982-2, which *inter alia* provided Popejoy coverage for property damage and other related expenses resulting from fire." (Ex. B, ¶ 26).

24.     The State Farm Complaint alleges that State Farm paid $210,343.74 for the Popejoy claim for property damage pursuant to the provisions of the policy. (Ex. B, ¶ 27).

25.     State Farm claims to be a *bonefide subrogee* of Popejoy to the extent of its payments. (Ex. B, ¶ 28).

26.     The State Farm Complaint asks for a judgment against Pro Home and/or Premium in the amount of $210,343.74, plus costs. (Ex. B).

**Notice to PCIC**

27.     PCIC first received notice of this loss on January 19, 2024.

28.     Raphael & Associates ("R&A") took over the handling of the claim for PCIC in mid-2024, and after their investigation, issued pre-suit declination letters to Premium and Pro Home. Copies of those letters are attached hereto as **Exhibits D** and **E**, respectively.

29.     PCIC did not receive notice of either the *Popejoy* suit or the *State Farm* suit until October 27, 2025, when it received a letter from State Farm's counsel advising PCIC of the Underlying Lawsuits.

30.     On November 17, 2025, PCIC sent Premium two separate letters, one regarding the *Popejoy* suit and one regarding the *State Farm* suit, agreeing to provide a defense to Premium in the Underlying Lawsuits under a full and complete reservation of rights under PCIC's Policy.[1] Copies of those letters are attached hereto as **Exhibits F** and **G**, respectively.

31.     Thereafter, PCIC assigned defense counsel to represent Premium in the Underlying Lawsuits.

**The PCIC Policy**

---

[1] PCIC reserves the right to amend this Complaint to include additional bases for a declaration of no coverage as described in Exhibits F and G, or otherwise, if necessary.

32.     PCIC issued a Commercial General Liability Policy No. PCA5022-PC409251 to Premium for the term September 14, 2021 to September 14, 2022 ("Policy" or "PCIC Policy"). The Policy includes a general aggregate of $2 Million, a "property damage" limit of $1 Million (per "occurrence"), a "bodily injury" limit of $1 Million (per "occurrence"), and a PCIC Group Shared Aggregate of $5 Million. The Policy provides base commercial general liability coverage pursuant to form PCIC GL 00 02 0818 and includes a $1,000 Self-Insured Retention ("SIR"). A copy of the Policy is attached hereto as **Exhibit H**.

33.     PCIC did not issue any policies to Premium that were effective after September 14, 2022.

**COUNT I**
**The Underlying Lawsuits Do Not Trigger Coverage Under The Policy**

34.     PCIC incorporates and restates the allegations of Paragraphs 1 through 33 above as if fully set forth herein.

35.     The Insuring Agreement of the Policy reads as follows:

**SECTION I – COVERAGES**
**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  **Insuring Agreement**
    a.  We will pay those sums that the insured becomes legally obligated to pay as "damages" for "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend you, the Named Insured, against any "suit" seeking "damages" to which this insurance applies, and which is timely reported to us as provided hereunder. Except as otherwise provided in this policy, we have no duty to defend any other insured. Our duty to defend you is further limited as provided below and in the exclusions made part of this policy. We will have no duty to defend any insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply and/or which is not timely reported to us. We may at our discretion investigate any occurrence and settle any claim or suit that may result. But:

6

(1) The amount we will pay for "damages" is limited as described in Section IV - Limits of Liability;

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of "damages" medical expenses, and/or "claim expenses" under Coverage A, B and/or C, or if the Group Shared Aggregate Limit or Per-Project Shared Aggregate Limit has been exhausted by payments for "damages" or "claims expenses";

(3) It is expressly understood and agreed that "claim expenses" (including defense expense) are included within, and are not in addition to, the Limits of Liability set forth in the Declarations;

(4) As noted in 1(a) above, we have no duty to defend any insured other than the Named Insured. However, we shall have no duty or obligation to defend the Named Insured in connection with any "claim" or "suit" where any other insurer is obligated to defend the insured, and we shall have no duty to contribute to or participate in the defense provided by any other such insurer. We shall have the right but not the obligation to defend any insured in connection with any "claim" or "suit" under these circumstances and/or where the insured has any other insurance under which, but for the existence of this Policy, any other insurer is obligated to provide a defense; and

(5) We may look to and consider extrinsic evidence outside of the allegations and/or facts pleaded by any claimant to determine whether we owe a duty to defend or indemnify against any "claim" or "suit". We may, at our discretion, investigate any "occurrence" and settle any "claim" or "suit" that may result.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that first takes place or begins during the "policy period". An "occurrence" is deemed to first take place or begin on the date that the conduct, act or omission, process, condition(s) or circumstance(s) alleged to be the cause of the "bodily injury" or "property damage" first began, first existed, was first committed, or was first set in motion, even though the "occurrence" causing such "bodily injury" or "property damage" may be continuous or repeated exposure to substantially the same general harm;

(2) The "bodily injury" or "property damage" resulting from the "occurrence" first takes place, begins, appears and is first identified during the "policy period". All "bodily injury" or "property damage" shall be deemed to first take place or begin on the date when the "bodily injury" or "property damage" is or is alleged to first become known to any person, in whole or in part, even though the location(s), nature and/or extent of such damage or injury may

change and even though the damage or injury may be continuous, progressive, latent, cumulative, changing or evolving;

(3) Prior to the "policy period", no insured listed under Paragraph 1 of Section III– Who Is an Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or "claim", knew that the "occurrence", or any resulting "bodily injury" or "property damage" had taken place, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the "policy period", that the "occurrence", "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period"; and

(4) All other insurance available to the insured(s) has been exhausted, regardless of any other insurance condition or clause in such insurance and regardless of whether such other insurance is stated to be primary, excess or contingent, unless such other insurance specifically is written to apply in excess of this particular policy in the Insuring Agreement of such other policy.

c. To the extent we pay any sums in connection with the defense or indemnity of any insured hereunder, we reserve the right to seek and obtain reimbursement for any sums paid in the connection with the defense and/or indemnity of non-covered claims.

(Ex. H).

36. The Policy includes certain defined terms under Section VI. Definitions, which

read:

5. "Bodily injury" means physical injury, sickness, disease or death sustained by a person that first happens or begins during the policy period. "Bodily injury" does not include mental anguish, emotional distress or emotional damages or injury(ies) of any kind.

6. "Claim(s)" means any facts that combine to give rise to a demand for something as a right or as due, a legally enforceable right or judicial action for payment of money, property, or enforcement of any right or relief provided by law, including but not limited to the following against the insured: any threat of legal action, settlement demand, service of suit, institution of arbitration proceeding, any written tender or demand for civil damages or other relief commenced by the insured's receipt of such demand or tender, or any civil proceeding commenced by the service of a complaint or similar pleading.

7. "Claim expenses" means:
   a. fees charged by any lawyer designated by us;

    b. all other reasonable fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a claim if incurred by us;

    c. "reasonable fees" charged and reasonable expenses incurred by any lawyer designated by the insured with our prior express written consent.

However, "claim expenses" does not include salary charges of regular employees or officials of us or the insured.

10. "Damages" means the monetary portion of any judgment, award or settlement; provided, however, that "damages" shall not include:

    a. taxes;

    b. any fines, including but not limited to civil, administrative or criminal fines, penalties, assessments, punitive damages, exemplary damages, multiplied damages, liquidated damages or damages for delay;

    c. sanctions;

    d. matters which are uninsurable under the law pursuant to which this policy shall be construed;

    e. costs to comply with any injunction or other directive or order issued by a court or any federal, state, municipal or local duly constituted governmental, quasigovernmental or administrative authority or agency; or

    f. the return of or restitution of fees, profits or charges for services rendered.

11. "Employee" includes a "leased worker", a "temporary worker", a "volunteer worker", and any person who is or may be deemed to be an employee of any insured or any person for whom an insured may be held liable as an employer.

19. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. "Occurrence" as used herein refers to the earliest act, omission, or creation of conditions or circumstances that give rise to any "property damage", "bodily injury" or "personal or advertising injury".

21. "Policy period" means the period beginning with inception date and ending with the expiration date shown in the Declarations.

24. "Property damage" means:

    a. physical injury to tangible property that first occurs or begins during the "policy period"; or

    b. loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

25. "Suit" means a civil proceeding in which "damages" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. an arbitration proceeding in which such "damages" are claimed and to which the insured must submit or does submit with our consent; or

       b.  any other alternative dispute resolution proceeding in which such "damages" are claimed and to which the insured submits with our express written consent.

29. "Your work":
    a.  means:
       (1)  work or operations performed by you or on your behalf; and
       (2)  materials, parts or equipment furnished in connection with such work or operations.
    b.  includes:
       (1)  warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
       (2)  the providing of or failure to provide warnings or instructions.

(Ex. H).

37.     The Policy requires allegations that the "property damage" and/or "bodily injury" be caused by an "occurrence" during the term of the Policy.

38.     Here, while Premium may have allegedly performed its work during the term of the Policy, the alleged "property damage" and/or "bodily injury" at issue did not occur until December 10, 2023, when the explosion happened at the Popejoy Unit – well after the termination of the Policy on September 14, 2022.

39.     Further, the Insuring Agreement requires that any alleged "property damage" must first take place and be first identified within the term of the Policy, and that "[a]ll 'bodily injury' or 'property damage' shall be deemed to first take place or begin on the date when the 'bodily injury' or 'property damage' is or is alleged to first become known to any person, in whole or in part…."

40.     Here, neither the alleged "bodily injury" or "property damage" first became known until well after the expiration of the Policy.

41.     Therefore, the terms of the Insuring Agreement are not met by the allegations in the Underlying Lawsuits.

WHEREFORE, Plaintiff, PCIC, prays this Court enter the following judgment:

A.  A declaration finding PCIC owes no duty to defend or indemnify Premium or Pro Home for the claims alleged in the Underlying Lawsuits; and

B.  For all such just and equitable relief, including costs of this suit.

## COUNT II
## Coverage Is Excluded By The Multi-Unit Structures Exclusion

42.     PCIC incorporates and restates the allegations of Paragraphs 1 through 41 above as if fully set forth herein.

43.     Section II of the Policy, COMMON POLICY EXCLUSIONS, includes Exclusion f., the Multi-Unit Structures Exclusion, which excludes coverage as follows:

> **f.  Multi-Unit Structures**
> "Bodily injury," "property damage" or "personal and advertising injury" arising out of, resulting from, caused by, contributed to by, or in any way related to work, development, construction, renovation or reconstruction on, or performed about the premises of:
> (1) condominiums, **townhouses**, timeshares, cooperative housing, multifamily homes, and any homeowner's association projects, or other multi-unit structures or complexes, other than apartments; or
> (2) any building or location which has been converted at any time, or is planned to be converted, into a condominium, townhouse, cooperative housing, or timeshare, whether or not the insured knew of the planned or actual conversion at any time.
>
> This Multi-Unit Structure or Projects exclusion does not apply where the construction or related work is limited to interior and non-structural work performed (a) on behalf of an individual unit owner of any condominium unit, townhouse, cooperative housing unit, or timeshare unit, in connection with such owned unit, or (b) on behalf of an owner of one detached single family home in connection with such home, or (c) on behalf of an Home Owners Association (HOA) for work performed to the Association's common areas only. However such work performed shall be limited to non-structural work or services and excludes any work or services involving, roofing, **siding**, stucco or plumbing. As used in this exclusion, "structural" includes but is not limited to all work or services related to framing, concrete, foundations, roofing, soils preparation, grading, excavation, and compaction.

(Ex. H).

44.     This exclusion bars coverage for alleged "property damage" or "bodily injury" as a result the insured's work on any multi-unit structure, specifically including townhouses.

45.     Here, as Premium's and/or Pro Home's alleged work was on the Popejoy Unit (a townhouse), and because Premium's work was structural in nature (siding is specifically included in the exclusion and not subject to any exception to the exclusion), the Multi-Unit Structures Exclusion excludes coverage for Premium and Pro Home under the Policy.

WHEREFORE, Plaintiff, PCIC, prays this Court enter the following judgment:

A. A declaration finding PCIC owes no duty to defend or indemnify Premium or Pro Home for the claims alleged in the Underlying Lawsuits; and

B. For all such just and equitable relief, including costs of this suit.

## COUNT III
## Coverage Is Excluded By The Explosives Exclusion

46.     PCIC incorporates and restates the allegations of Paragraphs 1 through 45 above as if fully set forth herein.

47.     The Policy includes Coverage A Exclusion u., Explosives, which excludes coverage for:

**u. Explosives**
"Bodily injury" or "property damage" arising out of, resulting from, caused by, contributed to, alleged to be, or in any way related, in whole or in part, to the existence, handling, storage, transportation, sales, distribution, or use of "explosives" or explosive devices. For purposes of this exclusion, "explosives" shall mean benzene, benzol, dynamite, ether, fireworks, gasoline, Greek fire, gunpowder, naphtha, nitroglycerine, or other explosives, phosphorus, or petroleum or any of its products.

(Ex. H).

48.     To the extent that the explosion as alleged in the Underlying Lawsuits was the result of "explosives" as defined in the Policy, the Explosives Exclusion excludes coverage for Premium and Pro Home under the Policy.

WHEREFORE, Plaintiff, PCIC, prays this Court enter the following judgment:

A.  A declaration finding PCIC owes no duty to defend or indemnify Premium or Pro Home for the claims alleged in the Underlying Lawsuits; and

B.  For all such just and equitable relief, including costs of this suit.

**COUNT IV**
**Coverage For The *State Farm* Suit Is Excluded**
**By The Water Or Fire Damage Liability Exclusion**

49.     PCIC incorporates and restates the allegations of Paragraphs 1 through 48 above as if fully set forth herein.

50.     The Policy includes Coverage A Exclusion ac., the Water or Fire Damage Liability Exclusion, which excludes coverage for:

**ac. Water or Fire Damage Liability**
"Bodily injury" or "property damage" related to, resulting from, caused by, contributed to in whole or in part arising from any area or areas of any property, building, or structure, other than the specific single unit, room, or area of the property upon which the Named Insured performed the work that caused the injury or damage alleged, which arises from, results from, or is caused in whole or in part by fire or water. With regard to any liability, claims, suits, injuries or damages arising in whole or in part from fire or water, it is the intent of this exclusion to limit coverage under this policy to "bodily injury" that takes place within, and "property damage" to, the specific room, office, unit, or area of the structure or property that was the subject of the Named Insured's contracted work. There is no coverage under this policy for "property damage" to, or "bodily injury" arising from, any other part of any property, project, or structure, or any other unit or units, that is or are next to, adjacent, adjoining, neighboring, bordering, surrounding or connecting to the area upon which the Named Insured performed or was to perform the work that caused the injury or damage alleged.

This exclusion does not apply to "property damage" arising from fire or water to the area of the property (e.g., the room, office, unit, or area of a property or structure) wherein the Named Insured was performing its work at the time of the "occurrence" that caused the injury or damage alleged. This exception shall not impact or limit the application of exclusion "j", or the application of any other exclusion, condition, or limitation of coverage under this policy.

This exclusion does not apply to any single family free-standing home if the Named Insured's contracted work did not include work on any other home, structure, or

13

property, and if the Named Insured's work was limited to the single family freestanding home only.

In addition to the foregoing, this exclusion does not apply if the Named Insured was a licensed plumbing contractor at the time that the work was performed, and the Named Insured's work was limited only to plumbing work.

(Ex. H).

51.     The State Farm Complaint alleges that State Farm paid, on behalf of Kenneth Popejoy, $210,343.74 for alleged "property damage."

52.     To the extent any alleged "property damage" was to a part of the Popejoy Unit other than the siding (where Premium and/or Pro Home was performing their work), the Water or Fire Damage Liability Exclusion bars coverage under the Policy.

WHEREFORE, Plaintiff, PCIC, prays this Court enter the following judgment:

A.  A declaration finding PCIC owes no duty to defend or indemnify Premium or Pro Home for the claims alleged in the *State Farm* suit; and

B.  For all such just and equitable relief, including costs of this suit.

## COUNT V
### Declaration And Judgment For Reimbursement Of Defense Costs

53.     PCIC incorporates and restates the allegations of Paragraphs 1 through 52 above as if fully set forth herein.

54.     The Policy includes Section V., Commercial General Liability Conditions, which includes Section 19 that reads as follows:

**19. Right of Reimbursement of Defense Costs and Indemnity Payments**
We have the right of reimbursement of all defense costs we incur in defending any insured and any indemnity payments we make in connection with a "suit" or in connection with any "claim(s)" for which there is no coverage under this policy, regardless of whether the "claim(s)" or "suit" included allegations or damages that may have been potentially covered at the time of tender to us or not. This right of reimbursement extends to all defense costs paid by us for defense of causes of action and/or damages for which there is no coverage under this policy, and any

14

related indemnity payments. Our right of reimbursement of such sums shall include prejudgment interest incurred by us from the date the payment(s) were made by us.

(Ex. H).

55.     As the Policy does not provide coverage for Premium, and PCIC has agreed to provide a defense for Premium in the Underlying Lawsuits and assigned defense counsel to represent Premium, PCIC has a right to reimbursement pursuant to Section 19.

WHEREFORE, Plaintiff, PCIC, prays this Court enter the following judgment:

A.  A declaration finding PCIC has a right to reimbursement pursuant to condition 19 of the Policy;

B.  A judgment in the amount of all defense costs paid by PCIC for Premium's defense in the Underlying Lawsuits,  including prejudgment interest incurred from the date such defense costs payment(s) were made by PCIC.

C.  For all such just and equitable relief, including costs of this suit.

Date: December 16, 2025.

PREFERRED CONTRACTORS INSURANCE
COMPANY RISK RETENTION GROUP, LLC


By:     */s/ John D. Dalton*
One of Its Attorneys
John D. Dalton (6324275)
Christopher D. Mackey (6324275)
Hannah R. Kelly (ARDC No. 6342261)
Saretsky Hart Michaels + Gould PC
118 N. Clinton, Suite 425
Chicago, IL 60661
P: (312) 820-9900
jdalton@saretsky.com
cmackey@saretsky.com
hkelly@saretsky.com
*Attorneys for Plaintiff, Preferred Contractors*
*Insurance Company Risk Retention Group, LLC*